IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Johnny Joyce, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 2:05-2768-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER and OPINION** |
| David Younts, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.     BACKGROUND

This admiralty action is before the court on defendant's motion to dismiss. Defendant David Younts owns a vacation house with a boat, dock, ramp and boat lift on Lake Moultrie in Bonneau, South Carolina. After returning from a boat ride on August 28, 2004, defendant put the boat on the boat lift, which physically removed the boat from the water.[1] The following day, Hurricane Gaston's winds forced the boat lift to collapse, sending the boat into Lake Moultrie. The unrestrained boat then crashed into plaintiff Johnny Joyce's neighboring property, and damaged a pier head, dock, sea wall, and other structures. Defendant concedes that Lake Moultrie is part of the navigable waters of the United States.

Defendant's April 18, 2005 affidavit described the incident:

> Although I had my truck and trailer there, ready to pull my boat out of the water from the ramp, I simply neglected to do so.

---

[1] Plaintiff's complaint and summary judgment motion contend the boat came loose from its moorings. His latest filing (memorandum in opposition to motion to dismiss) clarifies that the boat dropped from the boat lift into the water.

> . . . It was my fault and mistake in not leaving to secure the boat when I heard about the storm. . . . I knew better as there have been times in the past where boat lifts have collapsed on the Lake during storms.
> . . . [P]ulling the boat out of the water and up the ramp would have taken only about 5 minutes.
> . . .
> I am totally responsible for the damages suffered by Mr. and Mrs. Joyce to their pier head, dock, sea wall, and other structures. I simply did not exercise proper care. I did not act reasonably in light of the things I knew and when I learned them. . . .[T]here are countless number of things I could have done, and should have done, to make this accident something that never took place. This accident was not inevitable.

Plaintiff alleges negligence for failure to properly secure the boat and take other reasonable precautions. Defendant has filed a motion to dismiss, challenging this court's admiralty jurisdiction. Plaintiff has filed a summary judgment motion on the issue of liability. At a hearing on these motions on February 9, 2006, the court granted plaintiff's motion for summary judgment as to liability.

## II.    ANALYSIS

Defendant contends this court lacks admiralty jurisdiction because the boat was out of the water at the time of the alleged negligence. As described by the Fourth Circuit,

> With respect to torts involving vessels, admiralty jurisdiction is confined to actions that satisfy conditions both of location and connection with maritime activity. [T]o satisfy the location test, the tort must occur on navigable waters, or, if suffered on land, at least be caused by a vessel on navigable water. Additionally, in order to meet the requisite connection test, the facts giving rise to the wrong must bear a sufficient connection to maritime activity. This inquiry requires that the court first determine whether "the general features of the type of incident involved" have "a potentially disruptive impact on maritime commerce," and second, "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."

White v. United States, 53 F.3d 43, 45-46 (4th Cir. 1995) (quoting Jerome B. Grubart,

Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)).  Defendant asserts plaintiff cannot establish the "locality" prong.

The locality prong incorporates the Admiralty Extension Act, 46 App. U.S.C.A. § 740, which states "the admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

The Fourth Circuit's typical locality test does not apply to the unique facts in this action.  Generally, a court must "look to the place where the accident which ultimately gave rise to the cause of action was 'initiated.'" White, 53 F.3d at 47.  In White, a security officer tripped on the gangway while exiting a docked vessel, and hit her head on the pier.  The court focused on the fact that the guard tripped on the gangway, which was within admiralty jurisdiction.

In the instant case, the "accident" giving rise to the cause of action was the collapse of defendant's boat lift, which dropped the vessel into the water.  The boat lift is not within admiralty jurisdiction.  However, the court cannot overlook the fact that defendant's unrestrained vessel careened into plaintiff's dock and seawall while on navigable waters.  Admiralty jurisdiction "includes all cases of damage . . . to property, caused by a vessel on navigable water." 46 App. U.S.C.A. § 740.  This factual scenario falls within the straightforward application of the Admiralty Extension Act; therefore, the locality prong is met.

Case law supports this result.  In Dunn v. Wheeler Shipbuilding Corp., 86 F.Supp.

659 (E.D.N.Y. 1949), a negligently designed and manufactured ship led to the death of a crewman on the seas. The court concluded that admiralty jurisdiction existed because "the alleged error in design, although originating on land, became manifest, it at all, upon the high seas." Dunn, 86 F. Supp. at 661. In Hess, Inc. v. The Arizona, 149 F.Supp. 733 (D.C. N.Y. 1955), aff'd 242 F.2d 706 (2nd Cir. 1957), the court concluded admiralty jurisdiction existed after a ship ran aground because of an erroneous sounding chart supplied by a dock owner. In both cases, "admiralty jurisdiction was proper even though the wrong, supplying some incorrect information or design, occurred on land. The injury, however, was inflicted at a spot otherwise within admiralty jurisdiction and the tort was maritime in nature." J. W. Petersen Coal & Oil Co. v. U. S., 323 F. Supp. 1198, 1202 (D.C. Ill. 1970). As in Dunn and Hess, defendant's dry negligence caused wet damage.

### III.     CONCLUSION

For the reasons stated above, it is therefore **ORDERED** that defendant's motion to dismiss be **DENIED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 23, 2006**
**Charleston, South Carolina**